UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| VICTOR L. JORDAN, SR.,<br>　　　Plaintiff, | :<br>:<br>:<br>: |  |
| v. | :<br>: | No. 3:23-cv-855 (VAB) |
| DEPARTMENT OF CORRECTION, et<br>　al.,<br>　　Defendants. | :<br>:<br>:<br>: |  |

**INITIAL REVIEW ORDER**

Victor L. Jordan, Sr. ("Plaintiff"), currently incarcerated at Corrigan Correctional Center,

has filed a Complaint under 42 U.S.C. §§ 1983 and 1988; 18 U.S.C. §§ 1589(a), 1594(a), and

1761-62; 29 U.S.C. §§ 201, 202(a)(3), and "203(e)(1)(e)(2)(c)(d)(g)1938"; and Title II of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  ECF No. 1 ¶ 16.

He names twenty-three defendants: the Department of Correction, Regional Supervisor

Colleen Gallagher, Commissioner Angel Quiros, Warden Jennifer Petterson/Reis, Deputy

Warden Carlos Nunez, Deputy Warden Pierce, retired Unit Manager James Watson, Unit

Manager Robert Calo, District Administrator William Mulligan, District Administrator

Rodriguez, David Maiga, Karen Martucci, Lieutenant Tony Colella, Lieutenant or Captain

Richard Wauthier, Lieutenant Joshua Whitted, Lieutenant or Captain Marco Correia, Lieutenant

Justin Cossette, Officer Brian Lapila, Officer Guerrera, Dr. Wolf Craig, RN Dave, Officer

Millian, and Officer Otsuno.

In the description of the parties, Mr. Jordan states that defendant Calo is named in his

individual capacity only, defendant Martucci is named in her official capacity only, and all other

individual defendants are named in their individual and official capacities.  In the section of the

Complaint entitled "Capacity of Defendants," however, Mr. Jordan states that all individual defendants are named in their individual capacity only. *See* Doc. 1 ¶ 99. Mr. Jordan requests damages and unspecified injunctive relief under the ADA and the Rehabilitation Act.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A.

Based on this initial review, the Court orders as follows.

All claims except the Eighth Amendment claims for deliberate indifference to medical and mental health needs against Officer Guerrera and RN Dave are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

Mr. Jordan may file an Amended Complaint if he wishes to correct the deficiencies in his Americans with Disabilities Act and Rehabilitation Act claims. If he does so, he must identify programs or services that he was denied because of his disability. Any Amended Complaint shall include only these two claims against the Department of Correction, and the Eighth Amendment deliberate indifference to medical and mental health needs against Officer Guerrera and RN Dave in their individual capacities.

Any such Amended Complaint must be filed by **November 10, 2023**. If no Amended Complaint is filed by **November 10, 2023**, the case will proceed only on the Eighth Amendment

deliberate indifference claims against Defendants Guerrera and Dave.

## I.   **BACKGROUND**[1]

The alleged incidents underlying this action occurred while Mr. Jordan was confined at Cheshire Correctional Institution.[2] On February 16, 2022, prison officials allegedly placed Mr. Jordan in cell 45, North 1 Unit as a general population inmate in a single cell. The unit manager allegedly told Mr. Jordan that he, and all other inmates confined in single cells, had to move to East 3 Unit, accept a cellmate, or go to restrictive housing. ECF No. 1 ¶¶ 2, 48. East 3 Unit allegedly is located on the fourth floor in another building of the prison.

Although classified as general population cells, the cells in East 3 Unit allegedly did not have desks and stools, cable television outlets, or sprinklers in the cells and the unit did not have mailboxes for filing grievances and other request. *Id.* ¶¶ 3, 9. Both sentenced and unsentenced inmates allegedly were housed in East 3 Unit. *Id.* ¶ 7. Mr. Jordan alleges that the ventilation system of East 3 Unit is connected to the ventilation system of East 2 Unit which is a COVID-19 quarantine unit. *Id.* ¶ 49. Mr. Jordan also generally alleges that "DOC at Cheshire East-3 did not provide[] accommodations for individuals with disabilit[ie]s, and/or medical issues that may require specific accommodations, physical and/or mental, similar to [his] conditions." *Id.* ¶ 4. He does not indicate what those accommodations might be. Mr. Jordan alleges that he suffers from a ruptured Achilles tendon that did not heal properly and has a history of back injuries, back pain, breathing problems, and chronic chest pain. *Id.* ¶ 5.

---

[1] Rather than providing all factual allegation in his Statement of Facts, Mr. Jordan divides his allegations among three sections of his complaint, the Statement of Facts, the Introduction, and the Preliminary Statement. The Court includes facts from all three sections.

[2] Although Mr. Jordan alleges that the incidents occurred while he was confined at both Cheshire Correctional Institution and Garner Correctional Institution ("Garner"), the incidents underlying the action appear to have ceased when Mr. Jordan was transferred to Garner. No Defendant is described as working at Garner and Mr. Jordan only alleges with respect to Garner that he was there while exhausting his administrative remedies.

That same day, he allegedly submitted an inmate request form to Warden Reis, the

deputy wardens, and the unit manager of East Unit stating that he had not been vaccinated and

complaining that the move would expose him to COVID-19. *Id.* ¶ 49. The following day, Mr.

Jordan submitted a second inmate request complaining that East Unit 3 did not have a box for

mail and request forms or cable television outlets in the cells. *Id.* ¶ 50. Deputy Warden Pierce

responded that wooden boxes were being made, but Mr. Jordan notes that there were no boxes in

the unit on June 27, 2022, when he was transferred to Garner Correctional Institution.  *Id.* ¶ 51.

On February 16, 2022, Mr. Jordan allegedly filed a second inmate request to Warden

Reis, Deputy Wardens Nunez and Pierce, and Unit Manager Watson complaining about housing

sentenced inmates with unsentenced inmates. *Id.* ¶ 56.

On March 11, 2022, Mr. Jordan allegedly submitted an inmate request stating that the

lack of a stool and desk in his cell caused him to write hunched over for hours at a time and

caused him to experience serious back pain and neck pain. *Id.* ¶¶ 54, 59. Mr. Jordan allegedly

sent copies of his request to Warden Reis, James Watson, ADA Coordinator Colleen Gallagher,

and a doctor. APRN Charis, who is not a defendant, allegedly responded that Mr. Jordan should

address matters regarding cell furnishing to custody. *Id.* ¶ 55. District Administrator Rodriguez

also allegedly responded to the request, but Mr. Jordan did not consider the response sufficient.

*Id.* ¶ 59.

On March 16, 2022, Mr. Jordan allegedly submitted a request complaining that Officer

Guerrera denied him access to mental health treatment by "making threats, using curse words,

and then later he came back to my cell to gloat that if I wasn't planning to hurt myself, I will not

be seeing anyone." *Id.* ¶ 60.

On May 15, 2022, a Sunday, Mr. Jordan allegedly required mental health treatment on

third shift, but no one was available. He allegedly had been told that a nurse could evaluate him and, if necessary, place him on Behavior Observation Status in solitary confinement. *Id.* ¶ 64. Mr. Jordan allegedly submitted an inmate request to Deputy Warden Pierce and Dr. Wolf Craig, complaining that the unavailability of mental health staff on third shift at midnight left him vulnerable to harming himself or another. *Id.* ¶¶ 65-66. Mr. Jordan also allegedly filed a grievance on this issue. *Id.* ¶ 67. On June 16, 2022, Mr. Jordan allegedly filed a grievance appeal claiming a violation of the ADA by placing inmates with mental problems or disabilities in solitary confinement which exacerbates the disabilities. *Id.* ¶ 68.

Mr. Jordan allegedly has documented mental illness. *Id.* ¶ 69. On June 18, 2022, he allegedly informed Officer Millian that he was having trouble breathing and asked him to call the medical unit. When the medical unit allegedly told Officer Millian that Mr. Jordan had an inhaler to use, Mr. Jordan allegedly said that the inhaler was empty. At about 11:00 a.m., the medical unit allegedly said they would deliver a new inhaler. *Id.* ¶ 70. While waiting for medical staff to arrive, Mr. Jordan's chest allegedly felt tight and congested. He allegedly waited, while experiencing pain and distress for nearly an hour. *Id.* ¶ 71. When RN Dave allegedly arrived with the new inhaler, Mr. Jordan allegedly said his chest was hurting and asked to have his chest examined. RN Dave allegedly just walked away. *Id.* ¶ 72. Officer Millian allegedly told Mr. Jordan that they were waiting for an escort under Lieutenant Whitted's instruction. *Id.* ¶ 73. That allegedly was about 12:45 p.m.  *Id.* ¶ 74.

The next thing Mr. Jordan allegedly remembers is waking up on the floor of his cell at about 4:30 p.m. *Id.* Mr. Jordan alleges that another inmate overheard RN Dave tell Officer Millian to wait until Mr. Jordan "bugs out" before sending him to the medical unit. *Id.* ¶ 77. A second inmate allegedly confirmed this conversation the following day. The second inmate said

that Officer Millian was upset that RN Dave was not bringing Mr. Jordan to the medical unit immediately. *Id.* ¶ 78.

During meal service, Mr. Jordan allegedly told Lieutenant Whitted about the incident, claiming he was denied emergency medical care. Mr. Jordan allegedly told Lieutenant Whitted that he was going on a hunger strike. *Id.* ¶ 75. Mr. Jordan allegedly told Officer Ostuno on second shift that he continued to experience dizziness, headache, and congestion. Officer Ostuno allegedly called the medical unit but no one allegedly came to the housing unit. *Id.* ¶ 76.

Mr. Jordan allegedly was transferred to Garner Correctional Institution on June 27, 2022. *Id.* ¶ 87.

## II. DISCUSSION

Mr. Jordan states that the facts underlying the claims in this case are similar to, but not the same as, the facts underlying Case No. 3:22-cv-701(CSH), regarding Mr. Jordan's confinement in isolation in administrative segregation at Northern Correctional Institution, not general population confinement, albeit in a single cell, at Cheshire.

Mr. Jordan brings four causes of action, primarily asserting denial of equal protection, violation of the ADA regarding the requirement that he climb stairs, violation of the ADA for denial of medical and mental health treatment,[3] and violation of the Rehabilitation Act ("RA") and a First Amendment retaliation claim regarding transfer among housing units.[4]

---

[3] Third Cause of Action: Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, First, Eighth, and Fourteenth Amendment, Violation of ADA, rights, by Retaliation Cruel and unusual punishment, Deliberate Indifference, 28 C.F.R. § 35.108(c)(i) by Defendants Medical Dept. RN Dave, C/O Millian, C/O Guerrera, Lt. Whitted, C/O Otsuno, Warden Reis, Deputy Wardens Nunez and Pierce, Watson, Calo, Lolella, Wauthier, Correia, Whitted, Wolf Craig, and Colleen Gallagher, Angel Quiros, William Mulligan. Doc. 1 at 30.

[4] Fourth Cause of Action: Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a): Failure to provide reasonable accommodations for persons with physical Disabilit[ie]s, and mental illness, violating 1st Amendment in retaliatory measures in placement and or transfers and or movements from one unit to

As each cause of action references multiple constitutional rights and statues, the Court analyzes the claims individually rather than by cause of action.

## A.        The Americans with Disabilities Act and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. To state a cognizable ADA claim, Mr. Jordan must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) defendants are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  "A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Lenti v. Connecticut*, No. 3:20-cv-127(SRU), 2020 WL 427500, at *8 (D. Conn. July 24, 2020) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted)).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "[I]n

---

another, which conditions Violated 14th Amendment class of one, Liberty interest, equal protection under the law and no Due Process and Conditions of Confinement under Sandin 515, and 8th Amendment cruel and unusual punishment, and/or Deliberate Indifference Re placement in unit. Doc. 1 at 32.

assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that *substantially limit* those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 Fed. App'x 848, 852 (2d Cir. 2013) (quoting *Ryan v. Grae & Rybicki P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)) (internal quotation marks omitted) (emphasis added).

Mr. Jordan contends that the defendants have violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794(a)[5], by requiring him to climb stairs, denying him medical and mental health treatment, and not accommodating his disabilities in his cell assignment.[6]

Mr. Jordan alleges that he suffers from a ruptured Achilles tendon that did not heal properly and has a history of back injuries, back pain, breathing problems, and chronic chest pain. He alleges that his injuries "substantially limit [his] ability to walk up and down four flights of stairs in East 3 and without pain in leg and foot, feet, back pain." ECF No. 1 ¶ 109. In addition, Mr. Jordan states that his mental illness "substantially limit [his] performing major life activities, re caring for [his] life needs, working, concentrating, thinking and communicating with others." *Id.*

For purposes of initial review, the Court considers Mr. Jordan disabled within the meaning of the ADA. In a later stage of this case, however, Mr. Jordan will need to present evidence to support his conclusory statements, in order to prevail on any ADA claim.

---

[5] The only difference between the ADA and Rehabilitation Act is that the latter applies to entities receiving federal financial assistance while the former applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008). Because the standards under both statutes are the same, courts treat claims under the American with Disabilities Act and the Rehabilitation Act identically. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

[6] The Court assumes that this last example refers to Mr. Jordan's claim that he must eat and write while hunched over a legal box because the cell does not have a desk and stool.

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 Fed. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)); s*ee also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)).

This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Therefore, even where a plaintiff is proceeding *pro se*, the court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Mr. Jones merely recites the language of the ADA, alleging that he is excluded from participating in and denied the benefits of programs and activities. He does not identify, however, even one program or activity. The denial of medical or mental health care alone does not state a cognizable claim under either statute. The American with Disabilities Act "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of services previously provided." *Cercpac v. Health & Hosp. Corp.*, 147 F.3d 165, 168 (2d Cir. 1988).

Mr. Jones refers to prolonged isolation at Cheshire but has also stated that he chose to remain in a single cell rather than accept a cellmate. Thus, he has not alleged that his solitary confinement occurred because of something ordered by correctional staff. He also cites difficulty climbing stairs. Such difficulty, however, is insufficient to state an ADA claim. *See Alvarado v. Ramineni*, No. 9:08-CV-1126(TJM/GHL), 2010 WL 2949322, at *7 (N.D.N.Y. Mar. 15, 2010) (dismissing ADA claim based on difficulty climbing stairs, because "Plaintiff has not alleged that the discomfort he experiences climbing stairs has, in any way, prevented him from participating in or receiving the benefits of any service, program, or activity"), *report and recommendation adopted*, 2010 WL 2948235 (N.D.N.Y. July 22, 2010); *see also Jamison v. Baillie*, No. 2:10-cv-124-KJM-EFB P, 2016 WL 775746, at *7 (E.D. Calif. Feb. 29, 2016) (citing cases).

Accordingly, the American with Disabilities Act and the Rehabilitation Act claims are dismissed without prejudice to refiling, if Mr. Jordan can identify any programs or activities provided to able-bodies inmates that are denied to him because of his disabilities. *See Green v. Maldonado*, No. 3:17-cv-00957(CSH), 2017 WL 3568662, at *4 (D. Conn. Aug. 17, 2017) (ADA intended "to ensure evenhanded treatment between the disabled and the able-bodied" (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)).

If Mr. Jordan chooses to file an Amended Complaint and replead these two claims, he must identify a program or service he has been denied because of his disability.

### B.   The Retaliation Claim

To establish a retaliation claim, there must be factual allegations pertaining to: (1) the engagement in protected speech or conduct, (2) the taking of an adverse action against the person, and (3) a causal connection between the protected speech and the adverse action. *Burns*

*v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

Mr. Jordan characterizes his transfer to East 3 Unit as retaliation for the many lawsuits and grievances he files. ECF No. 1 ¶ 11.

Filing a lawsuit or grievance is protected activity that satisfies the first element of a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). Thus, Mr. Jordan has satisfied the first element.

As to the second element, Mr. Jordan alleges that he was transferred to a cell that did not have a desk and stool, cable television outlet, or sprinklers in a housing unit that did not have boxes for submitting requests and grievances. For purposes of initial review, the Court assumes that this transfer could constitute adverse action. But Mr. Jordan alleges that all inmates housed in single cells in North 1 Unit were offered the option of transferring to a single cell in East 3 Unit or accepting a cellmate. As this option was offered to all inmates housed in single cells, and Mr. Jordan chose the transfer option, he fails to allege facts from which the Court could infer that his transfer was in retaliation for his litigation and grievance activities.

Accordingly, Mr. Jordan's retaliation claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### C.    The Conditions of Confinement Claim

To state a cognizable Eighth Amendment claim for unconstitutional conditions of confinement, there must be facts alleged sufficient to establish an objective element, that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities," and a subjective element, that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*,

708 Fed. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)).

Objectively, the seriousness of a violation is determined based on contemporary standards of decency. *See Walker*, 717 F.3d at 125 ("[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency.") (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). The inquiry focuses on the "severity and duration" of the conditions, not any "resulting injury." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions may be considered in combination only where one combines with another to affect one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("The conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

Subjectively, there must be facts alleged showing that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and . . . dr[ew] that inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002).

Mr. Jordan argues that the lack of a desk and stool, cable television outlet, and sprinklers in his cell subjected him to unconstitutional conditions of confinement. The Court will consider separately, the lack of sprinklers, the lack of a desk and stool, the lack of cable television outlets, and the lack of grievance boxes.

### 1. Sprinklers

Mr. Jordan alleges that there are no sprinklers in the cells in East 3 Unit. Although prison officials have a duty to ensure that inmates are reasonably safe, they are deliberately indifferent

to inmate safety only when they know of and disregard an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (explaining that the Eighth Amendment forbids unconstitutional punishment, not unconstitutional conditions, so "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment").

Courts addressing this issue have held that the lack of sprinklers in prison cells, without more, does not state a constitutional claim. *See, e.g., Ford v. Aramark*, No. 18-cv-2696(NSR), 2020 WL 377882, at * 8 (S.D.N.Y. Jan. 23, 2020) (dismissing claim that inmate was placed in cell with disabled fire sprinkler where inmate alleged no facts suggesting that jail lacked adequate and reliable fire prevention system or that he was subjected to conditions supporting an inference of unreasonable risk of serious damage to his health); *Cutsinger v. Louisville Metro Dep't of Corr.*, No. 3:19-CV-P254-RGJ, 2019 WL 3255168, at *4 (W.D. Ky. July 19, 2019) (holding that the allegation that cells were unsafe because they lacked a fire sprinkler or evacuation plan was conclusory and failed to state an Eighth Amendment claim); *Deas v. Ingham Cnty. Jail*, No. 1:18-cv-838, 2018 WL 3853521, at *4 (W.D. Mich. Aug. 14, 2018) (dismissing claim based on lack of sprinklers and stating that "[t]he presence of sprinklers in the cells and common areas might enhance safety in the jail; however, the absence of sprinklers does not make the jail inherently dangerous"); *Mays v. Untig*, No. 08-CV-3379, 2010 WL 398901, at *3 (D.N.J. Jan. 26, 2010) ("The absence of sprinklers or fire drills, so long as the facility is in compliance with local fire code, does not amount to a viable claim.").

Mr. Jordan alleges only that the cells in East 3 Unit did not have sprinklers.  This statement is insufficient to state an Eighth Amendment conditions of confinement claim.

Accordingly, any Eighth Amendment claim based on the lack of sprinklers will be dismissed under 28 U.S.C. § 1915A(b)(1).

2.   Desk and Stool

Mr. Jones alleges that the cells in East 3 Unit do not have desk and stools and, as a result, he was required to eat and write hunched over a legal box. Courts considering similar claims, have held that inmates have no constitutional right to a desk and stool. *See Ennis v. Scully*, No. 86 Civ. 4578(JFK), 1989 WL 153034, at *2 (S.D.N.Y. Dec. 11, 1989) ("While it would be helpful to plaintiffs in their educational pursuits to be provided with desks, the Court does not find that failure to provide desks violates any Constitutional right of plaintiffs . . . ."); *see also Hatchet v. Darby*, No. Civ. A. DKC-13-0147, 2013 WL 490948, at *2 (D. Md. Feb. 7, 2013) (holding that failure to provide desk for each inmate was not deprivation of a life necessity but an inconvenience within the purview of expected conditions in prison); *Barbosa v. McCann*, No. 08 C 5012, 2009 WL 2913488, at *4 (N.D. Ill. Sept. 8, 2009) ("Plaintiff has no constitutional right to have a stool or other furniture on which to sit in his cell.") (citing cases).

Accordingly, as Mr. Jordan has no constitutional right to a desk and stool, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

3.   Cable Television Outlet

Next, Mr. Jordan alleges that the cells in East 3 Unit do not have cable television outlets. "It is well established, however, that prison inmates enjoy no constitutional right to watch television or listen to the radio, as those amenities are not considered to be necessities for prison inmates." *Gillard v. Rovelli*, No. 9:09-CV-0431(TJM/DEP), 2010 WL 5149277, at *5 (N.D.N.Y. Aug. 30, 2010) (citing cases), *report and recommendation adopted*, 2010 WL 5147258 (N.D.N.Y. Dec. 13, 2010); *see also Phelps v. Roork*, No. 1:19CV00073-KGB-JTR, 2020 WL

8299762, at *4 (E.D. Ark. June 3, 2020) (citing cases for the proposition that inmates have no right to in-cell cable television or to watch television), *report and recommendation adopted*, 2021 WL 279227 (E.D. Ark. Jan. 27, 2021).

Accordingly, as Mr. Jordan has no constitutional right to cable television access in his cell, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 4.  Grievance Box

Finally, Mr. Jordan alleges that there was no box in East 3 Unit in which to deposit grievances and inmate requests. Mr. Jordan has no constitutionally protected right to prison grievance procedures.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (noting that state-created grievance procedures are a state-created procedural entitlement, not a constitutional right).

As a result, as Mr. Jordan has no federal constitutional right to file grievances, the lack of a box in which to deposit grievances instead of handing them to staff for filing, is not unconstitutional.

Accordingly, any claim relating to the lack of a grievance box will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 5.  Exposure to COVID-19

Mr. Jordan alleges that he was exposed to COVID-19 because East 3 Unit shares a ventilation system with a COVID-quarantine unit. Mr. Jordan does not allege that he contracted COVID-19 while confined in East 3 Unit or allege facts supporting his conclusion that COVID-19 can be spread from one unit to another through the ventilation system.

Accordingly, this claim will be dismissed as conclusory and speculative. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

      6.   Housing Sentenced and Unsentenced Inmates in Same Unit

Mr. Jordan alleges that his Eighth Amendment rights were violated because unsentenced inmates were housed in his housing unit. This practice is not unconstitutional. *See Edwards v. Erfe*, 588 Fed. App'x 79, 81 (2d Cir. 2015) (sentenced prisoner cannot state Eighth Amendment claim because he was housed with an unsentenced inmate); *Cole v. Yu*, No. 3:23-cv-324(VLB), 2023 WL 3570636, at *2 (D. Conn. May 19, 2023) (practice of housing sentenced and unsentenced inmates together is not unconstitutional). As Mr. Jordan is sentenced, he cannot state a cognizable claim for being housed in the same unit as unsentenced inmates.

Accordingly, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

      7.   Personal Relationships

Mr. Jordan complains that unidentified Defendants permitted intimate personal relationships among staff thereby creating conflicts of interest and jeopardizing his security and privacy. Mr. Jordan does not identify any defendants engaged in such personal relationships or facts showing that his security or privacy was violated because of a personal relationship.

Accordingly, this claim will be dismissed as conclusory. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Twombly*, 550 U.S. at 556).

**D.    The Equal Protection Claim**

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was

based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injury a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980) (emphasis omitted)). Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). Thus, to sustain such a claim, there must be facts alleged showing that an inmate was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

Mr. Jordan brings his equal protection claims as a "class of one." To state a claim under this theory, Mr. Jordan must show that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, persons asserting a class of one equal protection claim "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

This high degree of similarity is required "to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Id.* (citation and internal quotation marks omitted). In other words, Mr. Jordan must demonstrate the existence of a "comparator"—someone who is "prima facie identical"—who was treated differently. *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 198 (D.

Conn. 2010).

Mr. Jordan does not identify a comparator for any of his equal protection claims. In fact, he alleges that all inmates who were confined in North 1 Unit in single cells were given the option to move to East 3 Unit or accept a cellmate. Nor does he identify any inmate with the same mental illnesses who was afforded twenty-four-hour access to mental health professionals.

Accordingly, as Mr. Jordan has not alleged facts supporting class of one equal protection claims, these claims will be dismissed under 28 U.S.C. § 1915A(b)(1).

### E.   **The Due Process Claim**

To state a cognizable due process claim, facts must be alleged sufficient to establish two elements. First, there must be facts alleged that the person possessed a protected liberty interest. Second, there must be facts alleged that the person was deprived of that interest without being afforded appropriate process. *See Williams v. Chuttey*, 767 Fed. App'x 105, 107–08 (2d Cir. 2019) (citing *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)). Regarding the first element, "to be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

In his fourth cause of action, Mr. Jordan contends that he was denied due process in connection with his transfer to East 3 Unit.

Mr. Jordan was transferred to a unit where the cells allegedly did not have fire sprinklers, cable television outlets, or desks and stools. As explained above, Mr. Jordan has no constitutional right to these items and their lack does not constitute an atypical and significant hardship. *See Slavick v. Colotario,* No. 1:18-cv-00290-DKW-KJM, 2018 WL 4567701, at *7 (D. Haw. Sept. 24, 2018) (lack of desk and chair not atypical and significant hardships to support

18

due process claim); *Gonzalez v. Mullen*, No. C 09-00953 CW(PR), 2010 WL 1957376, at *3

(N.D. Cal. May 14, 2010) (citing cases for proposition that deprivation of cable television,

telephone, property, access to commissary do not pose atypical and significant hardship on

inmates); *Warren v. Irvin*, 985 F. Supp. 350, 353–54 (W.D.N.Y. 1997) (denial of television

privileges not atypical and significant hardship). As he fails to allege facts showing that he was

subjected to an atypical and significant hardship, Mr. Jordan fails to identify a protected liberty

interest.

Accordingly, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### F.     The Denial of Medical and Mental Health Care Claims

The Eighth Amendment prohibits not only "deliberate indifference to serious medical

needs of prisoners," but also deliberate indifference to serious "mental health care" needs.

*Spavone v. New York State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (internal

quotation marks and citation omitted). Deliberate indifference may be "manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care to medical care or intentionally interfering with the treatment

once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A claim for deliberate indifference to medical or mental health needs is comprised of

objective and subjective elements. Objectively, the plaintiff must allege a "sufficiently serious"

medical or mental health condition. *Spavone,* 719 F.3d at 138 (citations omitted). To determine

whether a condition is "serious," courts consider whether "a reasonable doctor or patient would

find [it] important and worthy of comment," whether the condition "significantly affects an

individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v.*

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). In addition, a disagreement over the treatment provides does not show deliberate indifference. *See Wright v. Rao*, 622 Fed. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he received adequate treatment . . . . [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citation omitted)).

Mr. Jordan asserts two claims for denial of medical and mental health needs.  First, he challenges the fact that mental health staff are not available twenty-four hours a day, seven days a week. Second, he challenges the medical and mental health care provided by RN Dave and the access to such care impeded by Officer Guerrera.

Mr. Jordan alleges that he has been diagnosed with several mental illnesses. He does not identify these illnesses or indicate how they affect him. Mr. Jordan also alleges that he has chronic back and chest pain and breathing problems. For the purposes of initial review only, the Court will assume that Mr. Jordan has serious medical and mental health needs.

Regarding his first claim, Mr. Jordan alleges only that one Sunday evening at midnight, he requested mental health treatment but was told there were no mental health workers in the facility. He allegedly was told a nurse could see him, but Mr. Jordan allegedly rejected the offer. Mr. Jordan alleges that he complained about the lack of mental health staff to Deputy Warden Pierce and Dr. Wolf Craig. Thus, the Court assumes that Mr. Jordan is asserting this first claim against these two defendants.

Mr. Jordan alleges only that the lack of mental health staff left him vulnerable to harming himself. He does not allege that he suffered any injury from the absence of mental health staff. In addition, he concedes that if he were in danger of harming himself, medical staff could place him on Behavior Observation Status to ensure his safety until mental health staff was available to assess or treat him. Mr. Jordan does not find this alternative acceptable. This claim, therefore, appears to be only a disagreement over the treatment available which is not cognizable under section 1983.

Accordingly, the first deliberate indifference claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

In his second claim, Mr. Jordan alleges that two defendants were deliberately indifferent to his medical and mental health needs. On March 16, 2022, Officer Guerrera allegedly made threats against Mr. Jordan and allegedly refused to call the mental health unit when Mr. Jordan requested mental health treatment. On June 16, 2022, RN Dave allegedly delayed bringing a new inhaler to Mr. Jordan, and refused to examine Mr. Jordan's chest when he brought the new inhaler. As a result of the lack of treatment, Mr. Jordan allegedly lost consciousness for several hours. Mr. Jordan also alleges that RN Dave instructed officers not to send Mr. Jordan to the medical unit until he "bug[ged] out."

Accordingly, as both Defendants are alleged to have denied all treatment, the Court will permit the deliberate indifference claims against Officer Guerrera and RN Dave to proceed at this time.

### G.    The Conspiracy Claims

The intracorporate conspiracy doctrine provides that officers, employees, and agents of a single corporate entity are legally incapable of conspiring together. *See Hartline v. Gallo*, 546

F.3d 95, 99 n.3 (2d Cir. 2008). Although the Second Circuit has not yet applied the doctrine in

section 1983 cases, district courts within the Second Circuit have done so. *See Baltas v. Dones,*

No. 3:22-CV-38(MPS), 2022 WL 1239989, at *7 (D. Conn. Apr. 27, 2022) (dismissing

conspiracy claims under intracorporate conspiracy doctrine); *Vega v. Artus*, 610 F. Supp. 2d 185,

205-06 (N.D.N.Y. 2009) (dismissing conspiracy claim under intracorporate conspiracy doctrine

where all defendants were correctional employees acting within the scope of their employment);

*see also Williams v. Korines*, No. 9:16-CV-1157(FJS/TWD), 2018 WL 4521204, at *5 n.1

(N.D.N.Y. Sept. 21, 2018) (concluding that intracorporate conspiracy doctrine applied to an

inmate's Section 1983 conspiracy claim).

There is an exception to the intracorporate conspiracy doctrine when individuals are

"pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F.

Supp. 3d 270, 282–83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). Simple

allegations that the defendants were motivated by personal bias, however, are insufficient to

support the exception. *See Vega*, 610 F. Supp. 2d at 205 (holding that "in order to allege facts

plausibly suggesting that individuals were pursuing personal interest wholly separate and apart

from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a

plaintiff than simply alleging that the defendants were motivated by personal bias against

plaintiff."). Conduct meeting the exception must show officers working against, not for

departmental interests. *See, e.g., Mazyck v. Keller*, 531 F. Supp. 3d 630, 647 (W.D.N.Y. 2021)

(finding sufficient allegations to invoke exception where plaintiff alleged that defendants

fabricated evidence to cover up actions of a third defendant and those actions were not related to

corporate policy or management decisions); *Brown v. Annucci*, No. 19 CV 9048(VB), 2021 WL

860189, at *10–11 (S.D.N.Y. Mar. 8, 2021) (defendants "us[ed] excessive force and then

agree[d] to cover up the alleged assault by manipulating or destroying evidence").

All Defendants in this action are, or were, correctional employees and Mr. Jordan alleges that all Defendants were acting under color of state law. As Mr. Jordan alleges no facts suggesting that defendants were acting against departmental interests, the intracorporate conspiracy doctrine bars this claim.

Accordingly, all conspiracy claims will be dismissed under 28 U.S.C. § 1915A(b)(1).

### H.   <u>Claims Under Other Federal Statutes</u>

Mr. Jordan states that he brings this action under various federal statutes.

### 1.   <u>29 U.S.C. §§ 201, 202, and 203</u>

These provisions are sections of the Fair Labor Standards Act, which requires employers to pay minimum wages and overtime pay and gives employees the right to receive them. *See Aguila v. Corp. Caterers II, Inc.*, 199 F. Supp. 3d 1358, 1359 (S.D. Fla. 2016), *aff'd sub nom. Aguila v. Corp. Caterers IV, Inc.*, 683 Fed. App'x 746 (11th Cir. 2017). Section 216 of that Act is an express private right of action but it applies "only when an employee is owed unpaid minimum wages, or unpaid overtime compensation as a result of a minimum-wage or overtime violation." *Id.* (citations, brackets, and internal quotation marks omitted). As Mr. Jordan is not an employee of the Department of Correction, he cannot state a cognizable claim.

Accordingly, any claims brought under 29 U.S.C. §§ 201, 202, and 203 will be dismissed under 28 U.S.C. § 1915A(b)(1).

### 2.   <u>18 U.S.C. §§ 1761 and 1762</u>

These sections are part of the chapter concerning prison-made goods. Section 1761 includes provisions relating to prisoner wages but provides no private right of action. *See Jackson v. O'Dell*, No. CIV.01-1828 FRT/SRN, 2002 WL 31151359, at *2 (D. Minn. Sept. 24,

23

2002) (no private right of action under section 1761). Section 1762 merely provides that any package containing items manufactured or produced by convicts or in a prison be clearly marked with the nature of the contents and the name and location of the penal institution. 8 U.S.C. § 1762. It contains no reference to a private right of action.

Accordingly, any claims under 18 U.S.C. §§ 1761 and 1762 will be dismissed under 28 U.S.C. § 1915A(b)(1).

      3.   18 U.S.C. §§ 1589 and 1594

These provisions are parts of the Trafficking Victims Protection Reauthorization Act. Although a private right of action exists under section 1589, it is not applicable to this case. The statute creates a private right of action for victims of human trafficking. As Mr. Jordan alleges no facts suggesting that he is a victim of human trafficking, he cannot state a claim under section 1589. *See Shulka v. Deloitte Consulting LLP*, No. 1:19-cv-10578(AJN)(SDA), 2020 WL 3181785, at * 15 (S.D.N.Y. June 15, 2020); *see also* 18 U.S.C. § 1595(a) (providing private right of action for person victimized by a violation of section 1589). Section 1594 contains only general provisions and makes no reference to a private right of action. Subsection (a), the provision Mr. Jordan cites, states only that an attempted violation is punishable in the same manner as a completed violation.

Accordingly, any claims brought under 18 U.S.C. §§ 1589 and 1594 will be dismissed under 28 U.S.C. § 1915A(b)(1).

**III.    CONCLUSION**

All claims except the Eighth Amendment claims for deliberate indifference to medical and mental health needs against Officer Guerrera and RN Dave are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

Mr. Jordan may file an Amended Complaint if he wishes to correct the deficiencies in his Americans with Disabilities Act and Rehabilitation Act claims. If he does so, he must identify programs or services he was denied because of his disability. Any Amended Complaint shall include only these two claims against the Department of Correction, and the Eighth Amendment deliberate indifference to medical and mental health needs against defendants Guerrera and RN Dave in their individual capacities.[7]

Any such Amended Complaint must be filed by **November 10, 2023**.  If no Amended Complaint is filed by **November 10, 2023**, the case will proceed only on the Eighth Amendment deliberate indifference claims against Defendants Guerrera and Dave.

The Clerk of Court is directed to terminate all individuals, except Officer Guerrera and RN Dave as Defendants in this case.

The Court enters the following additional orders.

(1)     **The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Defendants Guerrera and Dave, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by **October 27, 2023**, and report to the court on the status of the waiver request by **November 10, 2023**. If any Defendant fails to return the waiver request, the Clerk of

---

[7] As noted above, it is not clear whether Mr. Jordan names the defendants in their individual capacity, official capacity, or both. Mr. Jordan seeks only damages, however, from these individual defendants. As damages are not recoverable from the defendants in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1995), the claims will proceed against Defendants Guerrera and Dave in their individual capacities only.

Court shall arrange for in-person service by the U.S. Marshals Service on Defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)   **The Clerk of Court shall** send Plaintiff a copy of this Order.

(3)   **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)   Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **January 5, 2024**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **June 7, 2024**.  Discovery requests need not be filed with the court.

(6)   All motions for summary judgment shall be filed by **July 12, 2024**.

(7)   Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)   If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10)     The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

SO ORDERED.

Dated this 6th day of October 2023 at New Haven, Connecticut.

_____/s/ Victor A. Bolden_____
Victor A. Bolden
United States District Judge