**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

VICTOR L. JORDAN, SR.,
*Plaintiff,*

v.

DEPARTMENT OF CORRECTIONS, et al.,
*Defendants.*

No. 3:25-cv-00855 (VAB)

**INITIAL REVIEW ORDER AND ORDER ON MOTION TO DISMISS**

Victor L. Jordan, Sr. ("Plaintiff"), an incarcerated inmate housed at Cheshire Correctional Institution,[1] has filed a *pro se* Third Amended Complaint under 42 U.S.C. § 1983 alleging various civil rights violations. Third Am. Compl. ("TAC") ¶ 1, ECF No. 36. He brings claims under the Eighth Amendment, as well as the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. *Id.*

Mr. Jordan names as Defendants the Connecticut Department of Corrections ("DOC"), sued in its official capacity[2]; Correctional Officer Guerrera, sued in both his official and individual capacity; and Registered Nurse ("RN") Dave, sued in both his official and individual capacity. *Id.* ¶¶ 2–4. Mr. Jordan seeks compensatory and punitive damages, along with declaratory and injunctive relief. *Id.* ¶ 5.

---

[1] According to the Department of Correction website, Mr. Jordan was sentenced on December 5, 2008, to serve a maximum of eighty-one years. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=165080 (last visited April 4, 2025). The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

[2] On this point, Mr. Jordan's allegations are inconsistent in that he alleges he sues the DOC in its official capacity, but later adds that "all named Defendants are being sued . . . in their individual capacities for damages[.]" TAC ¶ 5. The Court construes the allegations so as to benefit Mr. Jordan where appropriate.

The Court has reviewed Mr. Jordan's Third Amended Complaint under 28 U.S.C. § 1915A(b), as well as the Defendants' motion to dismiss, ECF No. 42.

For the reasons explained below, Defendants' Motion to Dismiss, ECF No. 42, is **GRANTED in part** and **DENIED in part**.

Mr. Jordan may proceed with his deliberate indifference claim as to RN Dave in his individual capacity. Mr. Jordan's claims against RN Dave in his official capacity are dismissed.

All other claims as to all other Defendants are dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Jordan alleges that he lives with several different disabilities, including physical disabilities stemming from a motorcycle accident, an altercation with police, and a basketball injury. TAC ¶¶ 9–12. His physical disabilities allegedly affect his spine, legs (including his Achilles tendon), and feet, *id.* ¶¶ 10–12, and impact his ability to walk long distances and up and down stairs, *id.* ¶ 13. He classifies his spinal injury as his most severe disability, from which he suffers severe chronic pain. *Id.* ¶ 14. He also allegedly suffers from mental health issues, some of which have instigated suicidal ideation and self-harm. *Id.* ¶¶ 15–17. Mr. Jordan alleges that the DOC is aware of these conditions. *Id.* ¶ 21.

On or around February 16, 2022, while housed at Cheshire, Mr. Jordan says "the [DOC] forced [him] to move from North 1 Unit to East 3 Unit." *Id.* ¶¶ 9, 18. To effectuate this move, Mr. Jordan allegedly had to "walk up four flights of steps with heavy property, with no assistance[.]" *Id.* ¶ 19. Mr. Jordan explains that the North 1 Unit is "fully handicap accessible," while other units are not, and the DOC permitted inmates with similar disabilities to remain in the North and South Units. *Id.* ¶¶ 18, 20 (implying that the DOC threatened Mr. Jordan with solitary confinement if he did not move).

After the move from the North Unit to the East Unit, Mr. Jordan allegedly began experiencing "serious back pain," "possibly" from "having to carry all his property up [four] flights of stairs, and then having to write and eat hunched over[.]" *Id.* ¶¶ 24, 25 (noting that his cell was not furnished with a table or a desk). Mr. Jordan says the move also had the effect of restricting his access to outdoor recreation; physical exercise, including physical therapy; and social activities, including eating with other inmates. *Id.* ¶ 23.

On March 11, 2022, Mr. Jordan allegedly submitted an internal complaint concerning his back and neck pain, as well as his grievance that his cell lacked a table or a desk. *Id.* ¶ 24, 25. Two months later, on May 11, 2022, Mr. Jordan allegedly filed a subsequent complaint, "arguing the ruling" regarding his first complaint, and he received an unspecified disposition on May 31, 2022. *Id.* ¶¶ 25, 27.

The following month, during the mid-morning of June 18, 2022, Mr. Jordan allegedly notified a correctional officer that he was experiencing trouble breathing. *Id.* ¶ 28. Mr. Jordan allegedly requested medical attention, and a member of the medical team informed the correctional officer that Mr. Jordan had an inhaler. *Id.* Mr. Jordan allegedly informed the correctional officer that his inhaler was empty, and the correctional officer passed that information along; a member of the medical team informed the correctional officer that a new inhaler would be delivered. *Id.* ¶ 28.

While awaiting delivery of a replacement inhaler, Mr. Jordan allegedly experienced chest tightness and pain, as well as congestion. *Id.* ¶ 30. Mr. Jordan estimates that about an hour had passed since he was told a replacement inhaler would be delivered. *Id.* Around that time, RN Dave allegedly arrived with a replacement inhaler, and Mr. Jordan informed RN Dave of his symptoms and requested an examination. *Id.* ¶ 31. Mr. Jordan says RN Dave "just walked away," and Mr.

Jordan assumed that a call for assistance was made. *Id.* ¶¶ 31–32.

Around 12:45 p.m., about two hours after first notifying a correctional officer about his symptoms, Mr. Jordan allegedly requested an update from a correctional officer, who informed him that they were awaiting "escort." *Id.* ¶¶ 32–33. Mr. Jordan next recalls waking up on the cell floor in his clothing around 4:30 p.m., disoriented and confused. *Id.* ¶ 33.

Mr. Jordan said that after he awoke, he asked the second shift correctional officer about what happened, and the correctional officer said he had no knowledge of Mr. Jordan's medical issues. *Id.* ¶ 34 (alleging Mr. Jordan asked the correctional officer "how he did not notice and observe [Mr. Jordan] sprawled out on the cell floor, unresponsive, while he took the count").

That evening, Mr. Jordan said he spoke with Lieutenant Whitted and informed him "of the incident," and that Mr. Jordan "was going on a hunger strike in protest of not receiving medical emergency care, and for [Lieutenant Whitted] to log [it] in the book." *Id.* ¶ 35. Mr. Jordan said that he also still felt "dizzy, had a headache, and [] felt congested," so he informed a correctional officer, who claimed that he called medical but medical did not respond. *Id.* ¶ 36.

Around that time, Mr. Jordan says another inmate informed him that the inmate had overheard a conversation between Defendant RN Dave and the correctional officer who helped Mr. Jordan request his replacement inhaler. *Id.* ¶ 37. The inmate allegedly told Mr. Jordan that Defendant RN Dave told the correctional officer, "Let[']s wait until he 'Bugs' out," (presumably in reference to Mr. Jordan) before sending Mr. Jordan for medical treatment. *Id.* (noting that the conversation occurred at approximately 12:30 p.m. when the officer and Defendant RN Dave left Mr. Jordan's cell). A second inmate housed near the officers' station allegedly corroborated the contents of this conversation to Mr. Jordan, and that inmate allegedly added that the correctional officer was upset with Defendant RN Dave. *Id.* ¶¶ 38, 39 (alleging that the correctional "[o]fficer

was overheard telling RN Dave, that if an inmate is having chest pains, you should bring him to medical, per protocol and procedure, and that RN Dave was making his job harder because [the correctional officer] will have to do all the paperwork.").

On June 18, 2022, Mr. Jordan allegedly filed a complaint to the medical department regarding his hunger strike resulting from what he argues amounted to a denial of medical treatment. *Id.* ¶¶ 42, 45. Then, on July 15, 2022, Mr. Jordan allegedly filed a separate internal complaint regarding the lack of medical treatment, and, when that complaint was denied, Mr. Jordan allegedly filed a subsequent complaint, which was also denied. *Id.* ¶¶ 40–41. Mr. Jordan allegedly received two responses, one of which functionally said he failed to exhaust his administrative remedies, which Mr. Jordan disputes. *Id.* ¶¶ 43–45, 46 (noting that Mr. Jordan also requested the preservation of video evidence). Mr. Jordan also allegedly filed other complaints related to this incident, and to those he alleges he received no response. *Id.* ¶ 47.

Mr. Jordan submits that the above actions of Defendants exacerbated his mental illnesses, have caused him pain and anguish, and have exacerbated his physical disabilities, including his spinal injuries. *Id.* ¶ 48.

Seeking relief, Mr. Jordan filed his initial Complaint on June 5, 2023. *See* Compl., ECF No. 1. On October 6, 2023, the Court issued its Initial Review Order dismissing all claims, except Mr. Jordan's claims alleging Eighth Amendment deliberate indifference to medical and mental health needs against Correctional Officer Guerrera and RN Dave. *See* Initial Review Order, ECF No. 10 at 25. The Court afforded Mr. Jordan an opportunity to file an Amended Complaint to correct the deficiencies in his claims under the ADA and the Rehabilitation Act. *Id*. Mr. Jordan timely did so on October 23, 2023. *See* Am. Compl, ECF No. 23. Defendants moved to strike, arguing Mr. Jordan failed to comply with the Court's limitations imposed on him in its Initial

Review Order and also with Rule 8 of the Federal Rules of Civil Procedure. *See* Defs.' Mot. to Strike, ECF No. 33 at 1–3.

The Court agreed with Defendants in part; although it disagreed that Mr. Jordan should file a more definite statement, it agreed with Defendants that Mr. Jordan's Amended Complaint inappropriately included claims already dismissed. *See* Ruling and Order, ECF No. 35 at 4–5.

The Court ordered Mr. Jordan "to file a Third Amended Complaint which includes **only** the ADA and RA claims asserted against the Department of Correction and the Eighth Amendment deliberate indifference claims against Defendants Guerra and Dave." *Id*. at 6 (emphasis in original).

Mr. Jordan did so, *see* TAC, and Defendants moved to dismiss, *see* Mot. to Dismiss.

## II. STANDARD OF REVIEW

### A. Initial Review under 28 U.S.C. § 1915A(b)

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted[,]" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A(b)(1))).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

B. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Further, "[a] case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "A defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion,

the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

**C. Motion to Dismiss for Improper Service**

A complaint may also be dismissed for insufficient service of process "if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). "Objections to sufficiency of process must be specific and point out the manner in which plaintiff has failed to satisfy requirements of the service provision utilized." *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1049–50 (S.D.N.Y. 1993).

"Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

**D. Motion to Dismiss for Lack of Personal Jurisdiction**

And to the extent that improper service affects the Court's personal jurisdiction over a defendant, Rule 12(b)(2) is implicated. On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a prima facie showing that jurisdiction exists. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a court [has chosen]

not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." (alteration in original) (internal quotation marks omitted)).

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci*, 673 F.3d at 59 (internal quotation marks and citation omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff." (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986))).

In evaluating a motion to dismiss under Rule 12(b)(2), a court considers the facts as they existed when the plaintiff filed the complaint. *See Glenwood Sys.*, 2010 WL 11527383, at *2 (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

E. **Motion to Dismiss for Failure to State a Claim**

And finally, to survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d

142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

"The Second Circuit has long held that an amended complaint completely replaces the original complaint," *Jordan v. Chiaroo*, No. 3:24-CV-204, 2024 WL 3925375, at *3 (D. Conn. Aug. 23, 2024), so the Court will not consider allegations from Plaintiff's first two amended complaints in considering the factual basis for his claims, *see Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint.").

## III. DISCUSSION

In his Third Amended Complaint, Mr. Jordan raises various civil rights claims against Correctional Officer Guerrera, RN Dave, and the DOC. He brings claims under the Eighth Amendment, the ADA, and the Rehabilitation Act.[3]

The Court addresses each below:

### A. The Claims Against Correctional Officer Guerrera

---

[3] To the extent Mr. Jordan brings a claim under the Protection & Advocacy for Individuals with Mental Illness ("PAIMI") Act, TAC ¶ 60, the Court dismisses that claim as undeveloped, *see Burke v. Lamont*, No. 3:22-CV-475 (OAW), 2022 WL 3997549, at *14 (D. Conn. Sept. 1, 2022) ("Plaintiff cannot mention a claim without providing factual support for that claim.").

A plaintiff must allege facts establishing a connection between a defendant and the alleged constitutional violations. *Twombly*, 550 U.S. at 555, 570 (Complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and allege "enough facts to state a claim to relief that is plausible on its face" (citations omitted)); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Mr. Jordan alleges that Correctional Officer Guerrera violated his civil rights but his Third Amended Complaint contains no specific, non-conclusory allegations about him. The only references are conclusory allegations without specific facts. *See* TAC ¶ 3 ("Defendant C/O Guerrera, at all times relevant to this claim, was a correctional officer, and in this capacity, he had the responsibility and authority to protect the rights and safety and security of the Plaintiff and his actions of unprofessionalism. He violated the Plaintiff's rights and put his health at risk. He is being sued in his official and individual capacity for damages."); *id.* ¶ 57 (alleging that "Defendants RN Dave and Guerra did in fact violate [Mr. Jordan's] ADA/RA . . . and PAIMI Act" rights)[4]; *id.* ¶ 63 (alleging "Defendants Guerrera and Dave are being sued in their individual capacity in this cause of action for damages, compensatory and punitive relief, reasonable attorney fees and cost.").

Accordingly, because Mr. Jordan has not alleged sufficient facts with respect to Correctional Officer Guerrera, the individual and official capacity claims against him will be dismissed. *See Reese v. Lightner*, No. 3:18CV1922 (KAD), 2019 WL 2176342, at *4 (D. Conn. May 20, 2019) (dismissing official and individual capacity claims where the plaintiff failed to

[4] The Court attributes Mr. Jordan's reference to "Defendant Guerra" as a scrivener's error. TAC ¶ 57.

allege facts regarding the acts or omissions of defendants); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (same).

**B. The Official Capacity Claims**

Without Correctional Officer Guerrera, only the DOC and RN Dave remain as Defendants. Relevant to them, a plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity, only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who plausibly have the authority to grant the prospective relief. *See Scozzari v. Santiago*, No. 3:19-CV-00229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

Accordingly, in the absence of such claims here, to the extent Plaintiff asserts official capacity claims for monetary damages against Defendants DOC and RN Dave, those claims will be dismissed as barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

**C. The Eighth Amendment Deliberate Indifference Claim**

**1. The DOC**

Mr. Jordan alleges that Defendant DOC acted with deliberate indifference when it required Mr. Jordan to move units, while allegedly fully aware of the conditions limiting his mobility. TAC ¶¶ 20–21. He submits that Defendant DOC's decision ordering him to move without assistance "forc[ed] him to choose between physical harm and psychological pain," which was "cruel and unusual at best, and is malicious and sadistic, with the intent to cause harm[.]" TAC ¶¶ 21. These actions, he says, violated his Eighth Amendment rights. TAC ¶ 22.

In its Initial Review Order, and again in its order on Defendants' Motion to Strike, the Court dismissed Mr. Jordan's claim against the DOC alleging deliberate indifference. *See* Initial Review Order, ECF No. 10 at 25 (Oct. 6, 2023) ("IRO"); Ruling and Order on Motion to Strike, ECF No. 35 at 6 (Oct. 25, 2024).

Accordingly, to the extent that Mr. Jordan alleges this claim now, it will be dismissed.

**2. RN Dave**

**i. Merits of Deliberate Indifference Claim**

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must present evidence of sufficiently harmful acts or omissions by a prison official. *See Estelle*, 429 U.S. at 104–06. The prison official must have intended to deny or unreasonably delay access to necessary medical care or to wantonly inflict unnecessary pain. *See id.* Deliberate indifference is a high bar: "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citations and internal quotation marks omitted).

A successful claim for deliberate indifference must satisfy both objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). The objective component requires Mr. Jordan to "show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). The Court must "examine how the offending conduct is inadequate and what harm, if any, the

inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated in part on other grounds by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023). (citation omitted).

If a plaintiff was completely deprived of medical care, courts "examine whether [his or her] medical condition is sufficiently serious." *Id.* (citation omitted). On the other hand, if the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quotation omitted).

Whether a medical need is sufficiently serious depends on factors that include if "a reasonable doctor or patient would find [the condition] important and worthy of comment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Under the subjective requirement of the deliberate indifference test, a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin*, 467 F.3d at 279–80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 280. Recklessness requires more than merely negligent conduct. "[M]ere disagreement over the proper treatment does not create a constitutional claim," and "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (citation and internal

quotation marks omitted).

Here, Mr. Jordan alleges that RN Dave failed to provide him with medical care while he was experiencing chest tightness, along with difficulty breathing. *See* TAC ¶¶ 30–32. These allegations constitute a claim of complete deprivations of a specific mental health treatment, and, with that understanding, the Court's inquiry focuses on "whether [Mr. Jordan's] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citation omitted).

Chest tightness is sufficiently serious so as to satisfy the objective component of the deliberate indifference test. *See Crowder v. Farinella*, No. 3:17-CV-1135 (VAB), 2018 WL 2197772, at *5 (D. Conn. May 14, 2018) (noting that the government did not contest that difficulty breathing and chest tightness, along with prevention from weekly multiple sclerosis medication, is sufficiently serious). Mr. Jordan alleges that his symptoms of difficult breathing and chest pains resulted in him waking up on the cell floor in his clothing around 4:30 p.m., disoriented and confused, allegedly having remained unconscious for around three hours. TAC ¶ 33. Thus, Mr. Jordan has adequately alleged facts satisfying the objective component of the deliberate indifference test.

The subjective component of the deliberate indifference test focuses on the actions of RN Dave. Mr. Jordan alleges that he informed RN Dave of his symptoms and requested an examination. TAC ¶ 31. Mr. Jordan says RN Dave "just walked away," and Mr. Jordan assumed that a call for assistance was made. *Id.* ¶¶ 31–32. But Mr. Jordan alleges that, after he awoke from having passed out, the second shift correctional officer said he had no knowledge of Mr. Jordan's medical issues. *Id.* ¶ 34. Mr. Jordan's allegations also include statements from another inmate who informed Mr. Jordan that Defendant RN Dave told the correctional officer, "Let[']s wait until he '[b]ugs' out," presumably in reference to Mr. Jordan, before sending Mr. Jordan for medical

treatment. *Id.* ¶ 37; *see also id.* ¶¶ 38, 39 (allegations that a separate inmate told Mr. Jordan that the correctional "[o]fficer was overheard telling RN Dave . . . that if an inmate is having chest pains, you should bring him to medical, per protocol and procedure, and that RN Dave was making his job harder because [the correctional officer] will have to do all the paperwork").

This case is in the early stages of litigation and, for now, these allegations are sufficient to suggest that Defendant RN Dave "[knew] of and disregard[ed] an excessive risk to [Mr. Jordan's] health or safety," thus satisfying the subjective requirement. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also id*. at 835 (noting that the subjective element of deliberate indifference entails "more than mere negligence" and "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result").[5]

Thus, taking Mr. Jordan's allegations as true, he has plausibly alleged that Defendant RN Dave acted with deliberate indifference in denying him access to medical treatment. *See id*. at 835. This ruling is consistent with the Court's Initial Review Order. *See* IRO at 21.

That said, "[a] plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation." *Bey v. Megget*, No. 3:24-CV-1258 (SVN), 2025 WL 27463, at *6 (D. Conn. Jan. 3, 2025). Mr. Jordan alleges no facts suggesting an ongoing constitutional violation as to the deliberate

---

[5] In his motion to dismiss, RN Dave argues that the Court should rely on the attachments to Mr. Jordan's Third Amended Complaint to find that the steps that RN Dave took were reasonable, and therefore those actions cannot support a deliberate indifference claim. *See* Mot. to Dismiss at 17. Doing so, however, would require the Court to weigh evidence. *See Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (refusing to consider exhibits to motion to dismiss that were "attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss."). RN Dave's arguments about the reasonableness of his actions thus are better suited for the summary judgment stage, or if necessary, at trial. *See Johnson v. Meachum*, 839 F. Supp. 953, 958 (D. Conn. 1993) ("Whether the defendants can establish that their alleged conduct was nevertheless 'objectively reasonable' is a question which 'has its principal focus on the particular facts of the case.' . . . On a motion to dismiss, where the court has no factual record before it, resolution of this issue is not appropriate. (citation omitted)).

indifference claim, and so he may not pursue injunctive or declaratory relief against Defendant RN Dave for that claim.

Accordingly, Mr. Jordan may proceed with his deliberate indifference claim as to RN Dave only against this Defendant in his individual capacity.

**ii. The Qualified Immunity Defense of RN Dave**

Qualified immunity may be successfully asserted on a motion to dismiss the complaint, but the defense "faces a formidable hurdle" at the pleading stage. *Horn v. Stephenson*, 11 F.4th 163, 169–70 (2d Cir. 2021). The court draws all reasonable inferences in favor of the plaintiff both from the facts alleged in the complaint that support the plaintiff's claim and those that would defeat the qualified immunity defense. *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

Courts apply a "two-step analysis to determine whether qualified immunity bars a plaintiff's claim against government officials for civil damages related to actions taken in the course of their official duties." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (citing *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019)). Qualified immunity is appropriate "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d. Cir. 2001) (citation and internal quotation marks omitted).

As to the first question, RN Dave argues that "the allegations in the Third Amended Complaint, even accepted as true, coupled with the exhibits that [Mr. Jordan] has attached to the complaint clearly demonstrate that Defendant [RN] Dave did not violate any clearly established law." Mot. to Dismiss at 20. "Specifically, the Inmate Grievance Form – Level 1 . . . documents that [Mr. Jordan] was seen by medical staff [on the date in question] . . . and he refused treatment.

The Health and Addition Services Unit Letter sent to [Mr. Jordan] on August 9, 2022 . . . also details the steps taken by Defendant [RN] Dave on the date in question, stating that the incident was reviewed by the local nursing supervisor and found that Plaintiff was 'offered and refused an inhaler, that [Plaintiff was] speaking in full sentences with no obvious respiratory distress and that at the time [Plaintiff was] found to have been yelling and cursing.'" *Id.* at 20–21. Therefore, in this Defendant's view, Mr. Jordan "cannot allege that Defendant [RN] Dave acted with indifference to Plaintiff's medical condition yet refuse treatment, then claim that Defendant Dave violated the law for failing to provide treatment." *Id.* at 21.

When asserting a qualified immunity defense at the motion to dismiss stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992)) (internal citations omitted).

At this early stage of the litigation, RN Dave cannot meet the "more stringent standard applicable to this procedural route." *Id*. The Court cannot find at this point that RN Dave did not violate any clearly established law. *See Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order) (denying qualified immunity claim at motion to dismiss stage where video evidence reference in the complaint did not "contradict or render implausible" the plaintiff's factual allegations); *Sabir*, 52 F.4th at 64 ("Although it is possible for a qualified immunity defense to succeed on a motion to dismiss, . . . such a defense 'faces a formidable hurdle . . . and is usually not successful[.]'" (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006))). The lawfulness of RN Dave's conduct depends on factual questions that are not fit to be

decided at this stage of the case where, critically, the facts necessary to support a qualified immunity decision are not "apparent on the face of the complaint." *Bangs v. Smith*, 84 F.4th 87, 95 (2d Cir. 2023).

Accordingly, RN Dave is not entitled to qualified immunity as to the deliberate indifference claim at this point in the litigation.

**D. The ADA and Rehabilitation Act Claims**

Finally, Mr. Jordan contends that Defendant DOC violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Rehabilitation Act, 29 U.S.C. § 794(a)[6], by moving him to a new unit, requiring him to climb stairs, not accommodating his disabilities in his cell assignment and furnishings, and prohibiting him from social activities and exercise. Mr. Jordan argues that the move from the North Unit to the East Unit had the effect of restricting his access to outdoor recreation; physical exercise, including physical therapy; and social activities, including eating with other inmates. TAC ¶¶ 22–23.

**1. Service of Summons**

"Federal Rule of Civil Procedure 4(m) provides that actions are subject to dismissal without prejudice unless service is made within 120 days." *Zapata v. City of New York*, 502 F.3d 192, 194 (2d Cir. 2007). Under Rule 4(m),

---

[6] There are two principal differences between the ADA and Rehabilitation Act. First, the Rehabilitation Act applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). Second, "the reach of the Rehabilitation Act is limited to denials of benefits '*solely* by reason of ... disability,' while the ADA applies more broadly to such denials 'by reason of . . . disability.'" *Schine by Short v. New York State Off. for People with Developmental Disabilities*, No. 15-CV-5870, 2017 WL 9485650, at *4 (E.D.N.Y. Jan. 5, 2017) (quoting 29 U.S.C. § 794(a); 42 U.S.C. § 12132) (emphasis in original)), *report and recommendation adopted*, 2017 WL 1232530 (E.D.N.Y. Mar. 31, 2017). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D.*, 331 F.3d at 272).

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

The DOC argues that the Court lacks personal jurisdiction over it because the DOC was not properly served. On June 16, 2024, the Court ordered the Clerk of Court to arrange for service on the DOC. *See* Ruling and Order, ECF No. 31 at 3. The docket reflects—and DOC argues—that service did not occur.

Significantly, here, as in *Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir. 1986), the delay in service was "through no fault of the litigant." *Id.* at 311. In *Romandette*, the Second Circuit held that dismissal of a suit for failure to perfect service was "premature," especially where "proper service could be yet obtained" and, "[a]s an incarcerated *pro se* litigant proceeding *in forma pauperis*, [the plaintiff] was entitled to rely on service by the U.S. Marshals." *Id.* (citing Fed. R. Civ. P. 4(c)(2)(B)(i)).

When a court grants leave to proceed *in forma pauperis*, it "shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996). Thus, a *pro se* plaintiff may avoid dismissal under Rule 4(m) if he "indicated to the court his reliance on service by the Marshals and he timely requested that the Marshals effect personal service." *Romandette*, 807 F.2d at 311. "As long as the *pro se* [plaintiff] provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m)." *Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) (summary order).

Here, nothing counsels in favor of dismissal where not only is this case still in the initial review phase under 28 U.S.C. § 1915A(b), but any fault in delay of service cannot be attributed to Mr. Jordan.

Accordingly, the Court will not dismiss any claims against the DOC for failure of service.

**2. The Merits of the ADA and Rehabilitation Act Claims**

To establish prima facie violations under Title II of the ADA and the Rehabilitation Act, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendants'] services, programs, or activities or [the defendants] otherwise discriminated against him by reason of his disability." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). There are "three available theories" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted).

Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Courts are to construe this definition broadly. *See id.* § 12102(4)(A).

In its initial review, "the Court consider[ed] Mr. Jordan disabled within the meaning of the ADA," noting that, "[i]n a later stage of this case, . . . Mr. Jordan will need to present evidence to support his conclusory statements." IRO at 8. Defendant DOC argues now that Mr. Jordan has not alleged non-conclusory allegations sufficient to support that he is disabled within the

understanding of the Acts. Mot. to Dismiss at 22–23. As it did before, the Court considers Mr. Jordan disabled within the meaning of the Acts.

Even with that consideration, however, the Court dismissed Mr. Jordan's ADA and Rehabilitation Act because he had failed to plead allegations regarding programs or activities provided to able-bodies inmates that are denied to him because of his disabilities. *See Green v. Maldonado*, No. 3:17-cv-00957(CSH), 2017 WL 3568662, at *4 (D. Conn. Aug. 17, 2017) (ADA intended "to ensure evenhanded treatment between the disabled and the able-bodied" (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)).

In his Third Amended Complaint, Mr. Jordan cites to difficulty climbing stairs, but, as before, that difficulty is insufficient to state an ADA claim. *See Alvarado v. Ramineni*, No. 9:08-CV-1126(TJM/GHL), 2010 WL 2949322, at *7 (N.D.N.Y. Mar. 15, 2010) (dismissing ADA claim based on difficulty climbing stairs because "Plaintiff has not alleged that the discomfort he experiences climbing stairs has, in any way, prevented him from participating in or receiving the benefits of any service, program, or activity"), *report and recommendation adopted*, 2010 WL 2948235 (N.D.N.Y. July 22, 2010); *see also Jamison v. Baillie*, No. 2-10-CV-124-KJM-EFB P, 2016 WL 775746, at *7 (E.D. Cal. Feb. 29, 2016) (collecting cases).

Mr. Jordan also alleges that the move from the North Unit to the East Unit also had the effect of restricting his access to outdoor recreation; physical exercise, including physical therapy; and social activities, including eating with other inmates. TAC ¶ 23. He alleges that the move to the East Unit had the effect of depriving him of the "recreational and physical exercise equipment"—specifically, pull up or dip bars—because that equipment is not available in the East Unit. *Id*. ¶ 52.

But Mr. Jordan has not alleged that "suffered any discriminatory treatment or could not benefit from DOC services, programs or activities *by reason of* his disability." *Crenshaw v. Dep't of Corr.*, No. 3:24-CV-439 (OAW), 2024 WL 3638242, at *3 (D. Conn. Aug. 1, 2024) (emphasis in original). Because Mr. Jordan offers no factual allegations suggesting that these programs were denied to him because of his disability, they cannot support his claims under the ADA and the Rehabilitation Act. *See Green*, 2017 WL 3568662, at *4.

Nor has he alleged factual allegations that he sought and was denied a reasonable accommodation. Although Mr. Jordan has filed multiple grievances regarding his conditions in the East Unit, these pertained to, for example, the furnishings and particularly the lack of tables in the East Unit cells. Mr. Jordan acknowledges, however, that all cells in the East Unit lack these furnishings, and, while he claims he would be more comfortable with his own desk, it is clear that he has access to tables in the day room. *See* Ex. A to TAC, ECF No. 36 at 37 (Inmate Grievance Form).

"Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (citation omitted). And such accommodations need not be "perfect or the one most strongly preferred by the plaintiff" in order to be effective. *Wright*, 831 F.3d at 72 (citations and internal quotation marks omitted).

In all, Mr. Jordan's allegations regarding disability discrimination are conclusory in nature, and so his ADA and Rehabilitation Act claims must be dismissed. *See Brown v. Reis*, No. 3:24-CV-00950 (KAD), 2024 WL 4723333, at *10 (D. Conn. Nov. 8, 2024) (dismissing disability discrimination claims based on conclusory allegations); *see also Avila v. Acacia Network, Inc.*, No. 1:24-CV-0884 (LTS), 2024 WL 4108012, at *6 (S.D.N.Y. Aug. 26, 2024) (same).

Further, to the extent that Mr. Jordan alleges that DOC violated the Acts through RN Dave's actions during his medical episode, those allegations are not viable. Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical or mental health treatment but do not allege that the inmate was treated differently because of his disability. *See, e.g.*, *Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing inmate's ADA claim based on inadequate medical care because the plaintiff did not include any non-conclusory allegations of discrimination based on disability and identified no program that he was unable to participate in or service he was denied because of his disability).

Accordingly, Mr. Jordan's claims under the ADA and the Rehabilitation Act will be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons explained herein, Defendants' Motion to Dismiss, ECF No. 42, is **GRANTED in part** and **DENIED in part**.

Mr. Jordan may proceed with his deliberate indifference claim as to RN Dave in his individual capacity. Mr. Jordan's claims against RN Dave in his official capacity are dismissed.

All other claims as to all other Defendants are dismissed.

The Clerk of Court is respectfully directed to remove from the caption the following individuals: Correctional Officer Guerrera and the Department of Correction.

The Court enters the following additional orders:

(1) The Clerk of Court shall verify the current work address of RN Dave with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Third Amended Complaint, this Order, and a waiver of service of process request packet to this defendant at the confirmed address by **June 6, 2025**. By **June 20, 2025**, the Clerk of Court shall report to the

Court on the status of the request. If RN Dave fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and RN Dave shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) RN Dave shall file his Answer to the Third Amended Complaint by **August 1, 2025**, admitting or denying the allegations and responding to the cognizable claims recited above. RN Dave may also include any and all additional defenses permitted by the Federal Rules.

(3) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **December 5, 2025**. Discovery requests need not be filed with the Court.

(4) All motions for summary judgment shall be filed by **January 9, 2026**.

(5) If Mr. Jordan changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so may result in the dismissal of the case. Mr. Jordan should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Jordan has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Jordan should also notify the attorney for Defendants of his new address.

(6) Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the Court. Mr. Jordan is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on Defendant RN Dave's counsel by regular mail.

(7) The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at

http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8) The Clerk of Court shall send a courtesy copy of the Third Amended Complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**SO ORDERED** at New Haven, Connecticut, this 16th day of May, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE