**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| VICTOR L. JORDAN, SR., | : | |
| Plaintiff, | : | |
| | : | No. 3:23-cv-00855 (VAB) |
| v. | : | |
| | : | |
| DEPARTMENT OF CORRECTIONS, *et al*., | : | |
| Defendants. | : | |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Victor Jordan, a sentenced inmate housed in the Department of Correction ("DOC"), filed a Complaint under 42 U.S.C. § 1983, alleging that twenty-three defendants violated his federally protected rights. *See* Compl., ECF No. 1. After an initial review of the Complaint under 28 U.S.C. § 1915A(a), IRO at 2, ECF No. 10, the Court dismissed all claims except Mr. Jordan's Eighth Amendment claims for deliberate indifference to medical and mental health needs against Officer Guerrera and RN Dave. *Id*. The Court, however, permitted Mr. Jordan to file an Amended Complaint if he wished to correct the deficiencies in his Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims against the DOC. *See id.*

Mr. Jordan filed an Amended Complaint. Am. Compl., ECF No. 12. Officer Guerrera and RN Dave moved to strike the Amended Complaint. Mot. to Strike, ECF No. 33. The Court granted that motion and required Mr. Jordan to file a Third Amended Complaint including only the ADA and RA claims asserted against the DOC and the Eighth Amendment deliberate indifference claims asserted against Officer Guerrera and RN Dave. Order at 5–6, ECF No. 35 (Oct. 25, 2024).

Mr. Jordan filed a Third Amended Complaint. Third Am. Compl., ECF No. 36. Defendants Guerrera, Dave, and the DOC moved to dismiss the Third Amended Complaint. Mot. to Dismiss, ECF No. 42. The Court conducted an initial review of the Third Amended Complaint and thereafter granted Defendants' motion in part by dismissing all claims except Mr. Jordan's Eighth Amendment deliberate indifference claim asserted against RN Dave. Order at 2, ECF No. 45.

Before the Court now is RN Dave's[1] motion for summary judgment and supporting memorandum (together, "Motion"). *See* ECF No. 53 (motion); ECF No. 53-1 (memorandum).

For the following reasons, the motion for summary judgment is **GRANTED**.

## I.    BACKGROUND[2]

While incarcerated at Cheshire Correctional Center ("Cheshire"), Mr. Jordan saw Dr. Williams, a DOC medical doctor, on June 9, 2022.[3] Rule 56(a)1 Stmt. ¶¶ 1, 4–5, ECF No. 56. Mr. Jordan complained of chest pain during this doctor's visit.[4] *Id.* ¶ 6. Dr. Williams determined

---

[1] "RN Dave" is identified as "David Riendeau" in the Motion. Motion at 1 n.1, ECF No. 53. But the Court will continue to refer to this Defendant as "RN Dave" to maintain continuity throughout this case.

[2] The following facts are taken from RN Dave's Local Rule 56(a)1 statement and supporting exhibits. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement . . . or the Court sustains an objection to the fact."); Fed. R. Civ. P. 56(c)(1)(A) (requiring that a movant must submit "depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" in support of summary judgment motion). These facts are supplemented, where necessary, by allegations contained in Mr. Jordan's Third Amended Complaint and declaration. *See Conquistador v. Cook*, No. 3:19-CV-1471 (KAD), 2022 WL 17821094, at *5 (D. Conn. Dec. 20, 2022) ("[T]he Court may construe a verified complaint as an affidavit for summary judgment purposes and consider statements therein that are made on personal knowledge."); *Lindsay v. Chapdeliane*, No. 3:19-CV-826 (JCH), 2021 WL 752841, at *3 (D. Conn. Feb. 19, 2021) (considering plaintiff's sworn declaration filed in opposition to motion for summary judgment to the extent statements made in it were based on plaintiff's personal knowledge).

[3] Mr. Jordan objects to paragraph four of RN Dave's Rule 56(a)1 statement, arguing that Dr. Williams's declaration "ref[ ]erring to anything after the fact is inadmissible[.]" Rule 56(a)2 Stmt. at 1 ¶ 4, ECF No. 58. Setting aside whether this is a proper objection, Dr. Williams's declaration states he had been a DOC doctor assigned to Cheshire before the incident in question. *See* Ex. A ¶ 3, ECF No. 55. Mr. Jordan does not object to that fact. *See* Rule 56(a)2 Stmt. ¶ 4, ECF No. 58. Accordingly, Mr. Jordan's objection as to paragraph four is overruled.

[4] Mr. Jordan objects to paragraph six of RN Dave's Rule 56(a)1 statement, *see* Rule 56(a)2 Stmt. at 2 ¶ 6, ECF No. 58, but he does not object to the portion of paragraph six maintaining that "[o]n June 9, 2022, it was noted that [Mr.

that "the chest wall was the source [of Mr. Jordan's chest pain][,] as opposed to the heart or lungs." *Id.* (internal quotations omitted). Dr. Williams prescribed Mr. Jordan a Ventolin inhaler, to be used every six hours as needed. *Id.* ¶ 7. Mr. Jordan received that Ventolin inhaler, containing 200 inhalations, from the pharmacy on June 10, 2022. *Id.* ¶¶ 8–9.

Mr. Jordan alleges that he began having trouble breathing at 10:45 a.m. on June 18, 2022. Third Am. Compl. ¶ 28, ECF No. 36. Mr. Jordan allegedly asked a correctional officer to call "medical." *Id.* "Medical" allegedly told the correctional officer that Mr. Jordan had an inhaler. *Id.* At 11:00 a.m., Mr. Jordan allegedly told the correctional officer that he had an inhaler but that it was empty. *Id.* ¶ 29. The correctional officer allegedly informed "medical" that Mr. Jordan's inhaler was empty, and "medical" said they would deliver a new one. *Id.* Between 11:00 a.m. and 12:00 p.m., Mr. Jordan allegedly began experiencing "tightness in his chest and congestion, followed by pain" while he waited for the delivery of the inhaler. *Id.* ¶ 30.

Mr. Jordan alleges that "RN Dave finally came to the cell with [a] new inhaler," *id.* ¶ 31, at 12:15pm. Jordan Decl. at 36 ¶ 4, ECF No. 58. Mr. Jordan allegedly told RN Dave that Mr. Jordan's "chest was hurting," that "he felt congested," and that he "needed to be examined." Third Am. Compl. ¶ 31, ECF No. 36. RN Dave allegedly "just walked away with [a correctional

---

Jordan] was complaining of chest pain . . . ." Rule 56(a)1 Stmt. ¶ 6, ECF No. 56. Rather Mr. Jordan objects to Dr. Williams's determination that "the chest wall was the source [of Mr. Jordan's chest pain][,] as opposed to the heart or lungs." *Id.* (internal quotation marks omitted). Mr. Jordan maintains that Dr. Williams "is not a [h]eart or [l]ung [d]octor or [s]pecialist. He is actually only a[n] [a]gent for the D.O.C. and has biased [u]lterior motives[] and has falsified previous exams[] regarding other civil action[s] [Mr. Jordan] has pending against the D.O.C. and his colleagues." Rule 56(a)2 Stmt. at 2 ¶ 6, ECF No. 58. The Court understands this objection to go to the weight of Dr. Williams's medical opinion. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."). But, on summary judgment, the Court "should not weigh evidence or assess the credibility of witnesses" because "[t]hese determinations are within the sole province of the jury." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (internal quotation marks omitted). At any rate, regardless of Dr. Williams's qualifications, Mr. Jordan presents no contrary evidence that this was not Dr. Williams's medical opinion. Accordingly, this objection is overruled.

3

officer] towards the control center (officer's station)."[5] *Id.* Mr. Jordan allegedly assumed that RN Dave and the correctional officer were calling for assistance. *Id.* ¶ 32. But, as of 12:45 p.m., no one had arrived. *Id.* ¶¶ 32–33. At approximately 4:30 p.m., Mr. Jordan allegedly awoke on the floor of his cell, "confused and disoriented." *Id.* ¶ 33.

RN Dave, a nurse at Cheshire, offers a starkly different account of his interaction with Mr. Jordan on June 18, 2022. *See* Rule 56(a)1 Stmt. ¶ 3, ECF No. 56. According to RN Dave's narrative contained in Mr. Jordan's medical records from that day,[6] a correctional officer called "medical" regarding Mr. Jordan's "complaint of shortness of breath." Ex. A at 9, Attach. 2, ECF No. 55. RN Dave came to Mr. Jordan's cell to offer Mr. Jordan a replacement Ventolin inhaler.

---

[5] Mr. Jordan also alleges in his Third Amended Complaint that two inmates told Mr. Jordan about a conversation they heard between RN Dave and a correctional officer near the "officer station[.]" *See* Third Am. Compl. ¶¶ 37–39, ECF No. 36. While the testimony of a witness "as to what the witness heard a party say is admissible as a party admission," the testimony of a witness "as to what someone else told them a party said is inadmissible double hearsay." *Gilligan v. Town of Moreau*, 234 F.3d 1261, at *3 n.4 (2d Cir. 2000) (summary order). Because double hearsay is inadmissible at trial, it is also inadmissible on summary judgment. *See Finnegan v. Bd. of Educ. of Enlarged City Sch. Dist. of Troy*, 30 F.3d 273, 274 (2d Cir. 1994) ("[D]ouble hearsay would not have been admissible at a trial and hence was insufficient to create a genuine issue to be tried."); *Scianna v. McGuire*, No. CIV. 3:94CV761 AHN, 1996 WL 684400, at *6 (D. Conn. Mar. 21, 1996) (concluding that double hearsay was not admissible on summary judgment). And because these allegations are inadmissible, the Court does not recite these allegations here. *See Nambiar v. Cent. Orthopedic Grp.*, LLP, 158 F.4th 349, 364 (2d Cir. 2025) ("Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." (cleaned up)).

[6] An inmate's medical records "are hearsay but would be admissible under the business records exception to the general exclusion of hearsay, provided they meet the requirements of Federal Rule of Evidence 803(6)." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 292 (D. Conn. 2015). Rule 803(6) requires such records to be accompanied "by a certification that complies with Rule 902(11) or (12) . . . ." Fed. R. Evid. 803(6)(D). RN Dave has provided two such certifications for portions of Mr. Jordan's medical records, *see* Ex. D at 12, ECF No. 53-5; Ex. E at 1, ECF No. 53-6, but these certifications accompany other medical records, not RN Dave's record from June 18, 2022. *See ibid.*; *see also* Ex. A at 9, ECF No. 55. It is thus unclear whether these certifications are meant to encompass RN Dave's record from June 18, 2022.

Notwithstanding this ambiguity, "it is well-established that even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Parks*, 144 F. Supp. 3d at 293 (internal quotation marks omitted). Because RN Dave would be capable of testifying to the authenticity of his June 18, 2022 medical record at trial, the Court may consider this record even if the submitted certifications are not meant to encompass that particular record. *See McCrae v. H.N.S. Mgmt. Co.*, No. 3:22-CV-00217-MEG, 2024 WL 1973431, at *3 (D. Conn. May 3, 2024) (concluding that even though plaintiff's medical records and photographs "[we]re not properly authenticated at the summary judgment stage," the court could still consider them on summary judgment because plaintiff "will be able to testify to the authenticity of the medical records and the photographs" at trial); *Alcantara v. DiGangi*, No. 15CV5584ENVRML, 2022 WL 1444284, at *2 n.3 (E.D.N.Y. May 6, 2022) (citing *Parks* to conclude that the Court may consider unauthenticated medical records on summary judgment); *Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (same).

*See id.* Mr. Jordan was "speaking in full sentences with no obvious respiratory distress . . . ." *Id.* Mr. Jordan "immediately refused to take the inhaler[,] yelling[,] '[F]uck that shit, [I] don't want that. No[,] fuck that, you're gonna see me in medical [n]ow[.] I got chest pains, call the L[ieu]tenant." *Id.* (internal quotations omitted).

RN Dave informed Mr. Jordan that "manipulation of legitimate chest pain is not the way to access medical services . . . ." *Id.* RN Dave again offered Mr. Jordan an inhaler, which Mr. Jordan "de[c]lined to take." *Id.* After handing out medication to other inmates in the unit, RN Dave returned to Mr. Jordan's cell to speak with Mr. Jordan and to offer him an inhaler for a third time. *See id.* Mr. Jordan responded by stating, "Fuck off[,] you gay ass bitch." *Id.* RN Dave spoke to a lieutenant about the encounter before returning to the medical unit. *Id.*

## III.    STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine

5

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). To do this, the non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation," *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotations omitted), but must instead "offer some hard evidence" on which "the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations omitted; emphasis original).

The Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). However, although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## IV.   DISCUSSION

RN Dave moves for summary judgment because (1) Mr. Jordan has failed to state a claim against him and because (2) RN Dave is entitled to qualified immunity.

The Court addresses each issue in turn.

### A.  The Deliberate Indifference to Serious Medical Needs Claim

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a

6

claim for deliberate indifference to serious medical needs, the prisoner must allege facts satisfying two components, one objective and one subjective. *See id.*

The objective component requires the prisoner to demonstrate that the alleged deprivation of medical care was "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). This objective showing in turn requires a court to make two inquiries. *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

First, a court must determine whether the inmate was "actually deprived of adequate medical care" by an official's failure to take "reasonable" measures in response to a sufficiently serious medical condition. *Id.* at 279–80; *see also Davila v. UConn Med. Ctr.*, 353 F. App'x 490, 492 (2d Cir. 2009) (summary order) ("At the most basic level, to establish a claim under the Eighth Amendment for deliberate indifference, the plaintiff must first demonstrate that he was 'actually deprived of adequate medical care.'" (quoting *Salahuddin*, 467 F.3d at 279)). "[P]rison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability." *Salahuddin*, 467 F.3d at 279–80 (citation modified).

Second, the Court must determine "whether the inadequacy in medical care is sufficiently serious," requiring an examination of "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280. This examination differs based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003).

This inquiry is necessarily contextual and fact-specific. *Id.* at 185.

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of "recklessness" as used in criminal law.'" *Id.* at 184 (first quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998); and then quoting *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002)). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

"A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference[;] [n]or does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Young v. Choinski*, 15 F. Supp. 3d 172, 182–83 (D. Conn. 2014) (internal quotations omitted); *see also Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]"). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (quoting *Hathaway*, 99 F.3d at 553).

8

To seek damages from RN Dave on a deliberate indifference to serious medical needs claim, as Mr. Jordan does here, Third Am. Compl. at 15, ECF No. 36, Mr. Jordan must show RN Dave's "personal involvement" in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). "Personal involvement," the Second Circuit has said, means either direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts[.]" *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (footnote omitted). In the context here, personal involvement may be shown by facts suggesting that RN Dave "treated [Mr. Jordan] or w[as] otherwise aware of his concerns." *Shand v. Connecticut Dep't of Correction*, No. 3:21-CV-523 (SVN), 2022 WL 503952, at *11 (D. Conn. Feb. 18, 2022); *see also See Raynor v. Erfe*, No. 3:20-CV-1102 (VLB), 2022 WL 972441, at *7 (D. Conn. Mar. 31, 2022) (granting summary judgment in favor of defendants who were "not personally involved in the treatment of [plaintiff] following [his] fall").

Starting with the first inquiry of the objective component—"whether the prisoner was actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, the undisputed evidence shows that RN Dave did not begin "treat[ing]" Mr. Jordan or become "otherwise aware of his concerns," *Shand*, 2022 WL 503952, at *11, until RN Dave received a call from a unit officer about Mr. Jordan being short of breath. *See* Ex. A at 9, Attach. 2, ECF No. 55. The undisputed evidence shows that, after receiving that call, RN Dave arrived at Mr. Jordan's cell with a Ventolin inhaler for Mr. Jordan. *See id*; Third Am. Compl. ¶ 31, ECF No. 36. The

9

undisputed evidence shows that, once RN Dave arrived at Mr. Jordan's cell, Mr. Jordan complained of chest pain. *See ibid.*

Mr. Jordan does not specifically maintain that he refused the inhaler, *see* Am. Compl. ¶ 31, ECF No. 36, but he does attest telling RN Dave that "the inhaler was not the solution. I need to go to medical." Jordan Decl. at 36 ¶ 4, ECF No. 58. At any rate, Mr. Jordan offers no evidence to contradict medical records showing that RN Dave offered Mr. Jordan an inhaler no less than three times. *See* Ex. A at 9, Attach. 2, ECF No. 55. Nor could Mr. Jordan offer such contrary evidence through his Third Amended Complaint or declaration because "[m]ultiple courts have declined at summary judgment to credit statements by a plaintiff that are flatly contradicted by contemporaneous medical records." *Chimney v. Quiros*, No. 3:21-CV-00321 (JAM), 2023 WL 2043290, at *3 (D. Conn. Feb. 16, 2023), *aff'd sub nom. in Chimney v. Feder*, No. 23-6478, 2025 WL 2629833 (2d Cir. Sept. 12, 2025) (collecting cases).

The undisputed evidence also shows that RN Dave offered Mr. Jordan the same Ventolin inhaler that Dr. Williams prescribed nine days earlier when Mr. Jordan reported to Dr. Williams presenting the same symptoms. *See* Rule 56(a)1 Stmt. ¶¶ 6–7, ECF No. 56. Because RN Dave provided the same treatment that Dr. Williams provided after a medical exam, *see id.* ¶ 7, RN Dave "act[ed] reasonably in response to an inmate-health risk . . . ." *Salahuddin*, 467 F.3d at 279 (citation modified). Thus, no reasonable jury could conclude that Mr. Jordan was "actually deprived of adequate medical care," in satisfaction of the first inquiry of the objective component. *Id.*; *see also Thomas* 832 F. App'x at 92 (concluding that doctor did not "actually deprive[ ] [plaintiff] of adequate care" because plaintiff did not allege any facts from which the

court could infer that doctor "acted unreasonably in treating [plaintiff's] back pain" with ibuprofen and muscle relaxants).

Because Mr. Jordan was not "actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, the Court need not address the second inquiry of the objective component— "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280; *see also Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (declining to consider second inquiry of objective component because "plaintiff's claim fail[ed] on the first subpart of the objective prong . . . ."); *Buffaloe v. Fein*, No. 12 CIV. 9469 GBD AJP, 2014 WL 1224446, at *3 (S.D.N.Y. Mar. 20, 2014) ("Because the medical treatment was reasonable, this Court need not assess whether any inadequacy was sufficiently serious or resulted in any harm."). And because at least one of the objective component's two inquiries remains unsatisfied, no "jury could *reasonably* find for the plaintiff," *Jeffreys*, 426 F.3d at 554 (internal quotations omitted; emphasis original), on the objective component of Mr. Jordan' deliberate indifference claim.

In any event, as to the subjective component, for a genuine dispute of material fact to exist, there must be record evidence showing that RN Dave "kn[e]w[ ] of and disregard[ed] an excessive risk to inmate health or safety[.]" *Smith*, 316 F.3d at 184 (internal quotation marks omitted). The undisputed evidence shows that RN Dave did not learn of Mr. Jordan's condition until he received a call from a unit officer indicating that Mr. Jordan was short of breath. Ex. A at 9, Attach. 2, ECF No. 55. The undisputed evidence also shows that RN Dave learned that Mr. Jordan's shortness of breath was caused by Mr. Jordan's chest pain. *See id.*; Third Am. Compl. ¶ 31, ECF No. 36.

Instead of disregarding the risk presented by Mr. Jordan's chest pain, the undisputed

11

evidence shows that RN Dave provided the same type of inhaler that Dr. Williams had provided nine days earlier. *See* Ex. A at 9, Attach. 2, ECF No. 55; Third Am. Compl. ¶ 31, ECF No. 36; Rule 56(a)1 Stmt., ECF No. 56 ¶ 7. As a result, on this record, no reasonable jury could conclude that RN Dave "disregard[ed] an excessive risk to inmate health or safety." *Smith*, 316 F.3d at 184 (internal quotations omitted); *see also Rush v. Fischer*, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), *aff'd sub nom. in Rush v. Canfield*, 649 F. App'x 70 (2d Cir. 2016) (summary order). (concluding that plaintiff failed to satisfy the subjective element because a nurse refused to provide plaintiff with Percocet "at about the same time" as two other doctors "also refused to prescribe him Percocet").

Though the undisputed evidence shows that Mr. Jordan wanted different medical care than what RN Dave had offered Mr. Jordan, *see* Ex. A at 9, Attach. 2, ECF No. 55; Third Am. Compl. ¶ 31, ECF No. 36, "the prison official's duty is only to provide reasonable care," *Salahuddin*, 467 F.3d at 279, "not the type or scope of medical care which [the inmate] personally desires." *U. S. ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970) (internal quotations omitted); *see also Collins v. Figura*, No. 3:19 CV 1689(RMS), 2023 WL 118495, at *11 (D. Conn. Jan. 6, 2023), *aff'd*, No. 23-109, 2024 WL 1739084 (2d Cir. Apr. 23, 2024) ("It is well-established that an inmate does not have a right to the medical treatment of his choice." (first citing *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); and then *Chance*, 143 F.3d at 703); *Hill*, 657 F.3d at 123 ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment[.]"); *Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Thus, Mr. Jordan's desire for medical care different from what RN Dave had offered him is not evidence of RN Dave's deliberate indifference to Mr. Jordan's medical condition.[7] *See Jones v. Tompkins*, 715 F. App'x 101, 103 (2d Cir. 2018) (summary order) (relying on *Chance* to conclude that plaintiff's "stated preference for a prescription narcotic is not evidence of [defendant-nurse's] deliberate indifference to [plaintiff's] condition."); *McIntosh v. City of New York*, 722 F. App'x 42, 46 (2d Cir. 2018) (summary order) ("To the extent that [plaintiff] believes that she received inadequate treatment, 'mere disagreement over the proper treatment does not create a constitutional claim.'" (quoting *Chance*, 143 F.3d at 703)); *Collins*, 2023 WL 118495, at *11 ("[T]hat the plaintiff does not agree with his healthcare providers regarding the adequacy of the [Home Exercise Program] he was prescribed does not amount to a claim of deliberate indifference on the part of the defendants.").

As a result, there is no admissible record evidence that RN Dave "kn[e]w[ ] of and disregard[ed] an excessive risk to inmate health or safety," *Smith*, 316 F.3d at 184, such that a "jury could *reasonably* find for the plaintiff," *Jeffreys*, 426 F.3d at 554 (internal quotations omitted; emphasis original), on the subjective component of Mr. Jordan's deliberate indifference claim.

Accordingly, because there is no genuine dispute of material fact as to either component of Mr. Jordan's deliberate indifference claim, summary judgment will be granted.

### B. The Qualified Immunity Defense

---

[7] To the extent Mr. Jordan argues that RN Dave was deliberately indifferent to Mr. Jordan's serious medical needs by not "escorting [Mr. Jordan] to medical for [a] more extensive evaluation . . . per [p]rotocol and procedure[,]" Resp. at 15, ECF No. 58, a prison officials' "failure to follow prison directives or procedures is not a constitutional violation." *Fonck v. Allen*, No. 3:19-CV-1665 (KAD), 2019 WL 5597739, at *3 (D. Conn. Oct. 30, 2019).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken— decisions[.]" *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amorev v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"In determining whether state actors are entitled to qualified immunity under federal law, [the Court] consider[s] two factors: (1) whether the facts presented make out a violation of a constitutional right; and (2) whether the right at issue was clearly established when it was allegedly violated." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 367 (2d Cir. 2021) (citation modified). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson,* 555 U.S. at 236). "In evaluating these two factors, [the Court] look[s] to the specific context of the case at bar rather than broad general propositions." *Torcivia*, 17 F.4th at 367 (citation modified).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation modified). "Only Supreme Court and Second Circuit precedent existing at the

14

time of the alleged violation is relevant in deciding whether a right is clearly established."

*Torcivia*, 17 F.4th at 367 (internal quotations omitted). There is no requirement that precedent be directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

In addition, qualified immunity protects state actors when it was "objectively reasonable" for the state actor to believe that his "conduct did not violate a clearly established right." *See Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[, ]then the officer is immune from liability." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017). "[I]f the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). But an official's conduct is "objectively unreasonable when no [official] of reasonable competence could have made the same choice in similar circumstances." *Id.* at 420–21.

For reason stated above, the Court has already determined that the facts presented do not "make out a violation of a constitutional right[.]" *Torcivia*, 17 F.4th at 367. Nor has Mr. Jordan identified that a "right at issue was clearly established when it was allegedly violated," *id.*, because inmates are not entitled to medical care of their choice. *See Hyde*, 429 F.2d at 867 ("The prisoner's right is to medical care— not the type or scope of medical care which he personally desires." (internal quotations omitted)); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) ("[T]he State is not constitutionally obligated . . . to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the

prison walls."); *Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Hill*, 657 F.3d at 123 ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.").

Finally, on this record, it was objectively reasonable for RN Dave to believe that his conduct did not violate a clearly established right. *See Washington v. Monroe*, No. 16-CV-9090(NSR), 2019 WL 1130155, at *8 (S.D.N.Y. Mar. 12, 2019) (concluding defendant was entitled to qualified immunity because the record contained insufficient facts to show "it was unreasonable for a person in [the health care provider's] position to believe that her alleged conduct—which consisted of conducting an initial physical examination of plaintiff and issuing him a prescription for two medications with refills for the next six months—failed to provide him with adequate medical care and violated his constitutional rights").

Accordingly, even if this claim had not been dismissed on the merits, RN Dave would have been entitled to qualified immunity.

## V.    CONCLUSION

For the reasons stated above, the motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment for the Defendant, RN Dave, and to close this case.

SO ORDERED.

Dated this 8th day of May 2026 at New Haven, Connecticut.

        /s/ Victor A. Bolden
        Victor A. Bolden
        United States District Judge

16